Elizabeth **BANKS** et al., Plaintiffs,

v.

The **TRAVELERS INSURANCE CO.**,
Defendant.

Civ. A. No. 72-1153.

United States District Court,
E. D. Pennsylvania.

May 31, 1973.

Michael Brodie, Paul R. Rosen, Philadelphia, Pa., for plaintiffs.

Robert M. Landis, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

In this action plaintiffs seek compensatory damages for defendant's breach of a group disability insurance contract and compensatory and punitive damages for fraudulent misrepresentations made by defendant's agents to induce the plaintiffs to purchase the insurance. The complaint is divided into two counts, and plaintiffs seek to represent classes of persons similarly situated in each count. In Count I, plaintiffs allege that the insurance contract is ambiguous and that defendant has applied inconsistent and varying standards for determining whether insured persons qualify for benefits under the contract. Further, plaintiffs claim that if the defendant, Travelers, applied proper and consistent standards, then all persons who are beneficiaries of the insurance policy and who have been denied benefits would receive benefits. The class which plaintiffs seek to represent consists of:

All persons who are or were employees of Honeywell, Inc. and who, as such, are or were beneficiaries of a group policy of insurance, issued by defendant as Group Policy No. GA765651, and who were denied by defendant all or any portion of the "Total Disability" specified in the provisions of Paragraph I of the Certificate of Insurance under Group Policy No. GA765651.

Complaint, ¶ 9(b)(i).

For relief in Count I, plaintiffs seek "their actual damages, together with interest, costs, attorneys' fees and such other relief as the Court deems necessary, just and proper."

In Count II, plaintiffs allege that the defendant represented that:

under the provisions of the Travelers' Group Disability Policy, as described in Paragraph I of the Certificate of Insurance, "total disability" benefits would be paid to all persons who, after the Qualifying Disability Period referred to in Paragraph I of the Certificate of Insurance, were unable to engage in any and every duty pertaining to the occupation or employment for wage or profit for which the said Count II Plaintiffs were or be-

came reasonably qualified to perform through or as a result of their training, education or experience at their jobs at Honeywell, Inc., Fort Washington Industrial Division.

Complaint, ¶ 20(a).

The plaintiffs further allege in Count II that the defendant intentionally made these representations, the representations were false, the representations were made to induce the plaintiffs to purchase the insurance, and the plaintiffs relied on the representations when they purchased the insurance.

The plaintiffs, in Count II, seek to represent a class consisting of all persons:

> who are or were employed by Honeywell, Inc. on an hourly basis, at the Industrial Division, Fort Washington, Pennsylvania, and who, as such, are or were beneficiaries of the Group Policy No. GA765651, and who were denied by defendant all or any portion of the "Total Disability" benefits specified in Paragraph I of the Certificate of Insurance issued pursuant to such policy under circumstances referred to in the Second Count hereof.

Complaint, ¶ 9(b)(i).

The language of the insurance certificate which defines total disability reads as follows:

> The term "total disability" as used herein means the complete inability of an employee to engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Employee is or becomes reasonably qualified by training, education, or experience except that during the Qualifying Disability Period plus the first twenty-four months of absence from work due to disability thereafter, the Employee shall be deemed totally disabled while he is unable to perform any and every duty pertaining to his occupation and is not engaged in any occupation or employment for wage and profit.

Complaint, Exhibit "A", ¶ 1.

Before us at this time are plaintiff's motion for a determination that the above-entitled action is maintainable as a class action, defendant's motion for summary judgment, defendant's motion for severance, plaintiffs' motion to compel complete answers to interrogatories, plaintiffs' motion for inspection of documents, and plaintiffs' motion for production of witnesses for depositions.

In resolving these motions we shall first consider defendant's motion for summary judgment. To the extent that it is granted, it will be unnecessary to resolve other motions. See Local Union No. 67 v. Duquesne Brewing Co., 354 F. Supp. 1033, 1035 (W.D.Pa.1973).

Plaintiffs base jurisdiction solely on diversity of citizenship, 28 U.S.C. § 1332(a) (1970). Defendant believes, however, that none of the claims of the plaintiffs exceed the jurisdictional amount, $10,000.

In the complaint, plaintiff Banks claims losses of $46,616; plaintiff McRoberts claims $13,167; plaintiff Denneny claims $20,460; and plaintiff Cole claims $28,420. Complaint, ¶ 16. These sums represent the total sum each plaintiff would receive if he collects benefits up to age 65.

The standard for determining the amount in controversy for jurisdictional purposes in a suit regarding payment of benefits under a disability insurance contract is the amount owing at the time of the filing of the suit. Beaman v. Pacific Mutual Life Insurance Co., 369 F.2d 653 (4th Cir. 1966); Keck v. Fidelity and Casualty Co., 359 F.2d 840 (7th Cir. 1966).

Applying this standard no plaintiff has as of the time this action was filed suffered ten thousand dollars damages. Plaintiffs' only response to this argument is that they allege punitive damages. That is true, but only in Count II. Therefore, Count I must be dismissed unless the plaintiffs are per-

mitted to aggregate their claims or jurisdiction is retained under the doctrine of ancillary jurisdiction.

■ The law is settled that when several plaintiffs having separate and distinct demands join in one suit:

it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

Pinel v. Pinel, 240 U.S. 594, 596, 36 S. Ct. 416, 417, 60 L.Ed. 817 (1916). Clearly these plaintiffs do not have a "common and undivided interest" but rather separate interests and rights derived from their separate subscriptions to the insurance policy. Therefore, these plaintiffs cannot aggregate their Count I damages to attain the jurisdictional amount.

■■ The class action allegations do not permit the plaintiffs to aggregate their claims to reach the jurisdictional amount. Aggregation is permitted only in "true" class actions. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L. Ed.2d 319 (1969). True class actions are those in which joinder of all interested persons would be essential. 3B J. Moore, ¶ 23.08, at 23-2505 (1969). In other words, the right which the plaintiffs seek to enforce must be joint, common, or derivative. In this instance, the plaintiffs seek to enforce separate rights, arising from separate medical conditions, and separate enrollments in the insurance program. Therefore, these plaintiffs may not aggregate their claims in the class action.

■ We shall not permit plaintiffs to proceed in Count I under the doctrine of ancillary jurisdiction because the two counts involve separate circumstances; Count I involves contract interpretation, and Count II alleges fraud in the inducement to purchase. The facts and circumstances of each count are sufficiently separate and distinct that no common nucleas of facts binds them, and we do not foresee a significant saving of judicial resources if the plaintiffs are permitted to proceed in Count I. We will therefore dismiss Count I.

■ Count II will not be dismissed, however, because there are demands for punitive damages. Because the complaint alleges intentional misconduct, misrepresentation and fraud, it is possible that if plaintiffs prove their case they would receive punitive damages. Therefore, we cannot at this time conclude to a legal certainty that plaintiffs do not each have a reasonable expectation of recovering ten thousand dollars. On the merits of the case, plaintiffs must, of course, have credible evidence to support their allegations and prove that defendant is legally responsible for the alleged fraudulent statements by its agents. We voice no opinion at this time regarding plaintiffs' ultimate success. We merely believe that it would be premature to grant summary judgment for defendant in this court before allowing plaintiffs an opportunity to pursue discovery. Penn Galvanizing Co. v. Lukens Steel Co., 59 F.Supp. 74 (E.D.Pa.1973).

■ We will not, however, permit the plaintiffs to proceed as a class under Count II of their complaint because they have not fulfilled the requirements set forth in Fed.R.Civ.P. 23.

To maintain a class action, the plaintiffs are required to satisfy all the prerequisites of Rule 23(a) and the requirements of one of the subsections of Rule 23(b). We believe the most substantial deficiency in the plaintiffs' undertaking to represent a class is that they fail to fulfill any of the requirements of subsection (b). The reason that the plaintiffs are unable to fulfill the requirements of subsection (b) is that their cause of action is individual in nature. They allege that a sales representative of the defendant intentional-

ly made false statements regarding the terms of a disability insurance policy. To collect money damages, each plaintiff must show which false statements he heard and which of those statements he relied on in the purchase of the insurance. Each must then prove that he has a medical disability and that his individual different medical condition fell between the terms of the insurance policy and the representations made. That is, each must show that the misrepresentation caused the loss. Finally, they must prove that each member of the class complied with the contractual preconditions for collection of benefits such as timely notice of disability and submission to reasonable medical examinations. It should be noted that all of these elements must be proven to establish liability; damages is a separate question.

Because the proof must be so individualized, plaintiffs have not met the requirements of Rule 23(b). Because so many factual issues exist, there is little risk of inconsistent adjudications which would impose "incompatible standards of conduct" for Travelers; nor would the adjudications with respect to individual matters be dispositive of the interests of the persons not parties to the action; nor would other actions substantially impair or impede their ability to protect their interests. Each case would be factually distinguishable because the facts are so individual and the right so separate. Consequently, a judgment for one plaintiff would have very little effect on the outcome of another suit. Therefore, the plaintiffs have not fulfilled the requirements of a Type I class action.

Plaintiffs may not represent a class in type II suit because the only remedy they seek is monetary damages. This type of suit is appropriate only for injunctive or declaratory relief. See Committee Note of 1966 to Rule 23 as Revised in 1966, 3B J. Moore, Federal Practice, ¶ 23.01 [10.–2], at 23–28 (1969).

The only other type of class action available to plaintiffs is type III, the common-question class suit. Admittedly, there are several common questions which a class suit might help to resolve efficiently. For example, the agents of the defendant, Travelers, may or may not have had authority to make changes in the insurance contract, and facts may or may not exist by which Travelers would be held liable for its agents representations. Conclusions on these matters should not change from plaintiff to plaintiff. We believe, however, that the number of issues for which the evidence will be different for each individual greatly exceeds the number of issues for which there will be different evidence. Therefore, a class action would be of very limited utility in resolving the disputes between any class of plaintiffs and the defendant and the difficulties of running a class action of this nature would be great. We believe the proceedings inevitably would break down into a series of separate law suits. Common questions do not predominate over questions involving only individual members, and a class action would not be a superior method for the adjudication of the controversy.

The plaintiffs' motion for a determination that this action is maintainable as a class action will be denied.

 Also before us at this time is defendant's motion for severance. Severance is a matter in which the Court has a great deal of discretion. We believe that there would be little to be gained by severing the claims at least before the end of discovery. When the case is ready for trial and we have a better understanding of the issues, then we will be willing to reconsider severance. The motion for severance will be denied.

On plaintiffs' motion to compel discovery, we note that some questions appear to be related only to the case of Houck v. Travelers Insurance Co., 356 F.Supp. 729 (E.D.Pa.1973), which in an Order

**164**

dated February 23, 1973 was remanded to the state court. Others appear to be related to Count I of the complaint in this action and the class action in Count II, which will be dismissed by this Memorandum. Thus, we need not dispose of such questions.

■ We hold that question number 6 in the set of interrogatories filed November 1, 1971, is irrelevant to this proceeding because the amount of the premium has no significance.

Question number 8 has relevance only to the class action which will be dismissed.

Question number 10 is relevant only to the extent that it applies to the Fort Washington, Pennsylvania facility where plaintiffs were employed. The alleged fraudulent statements may have occurred during the negotiations about which plaintiffs inquire.

Interrogatories 19 and 20 will not produce any information relevant to this suit.

■ Interrogatories 21 through 29 deal with negotiations and are relevant to the extent that they apply to the negotiations for Fort Washington hourly employees of Honeywell.

Interrogatories 30 through 32 will not lead to any relevant information.

Defendant shall give a complete answer to interrogatory 48.

Interrogatory 49 appears to be answered.

■ The motion by plaintiffs to produce documents shall be granted in part and denied in part. It will be granted to the extent that they request documents relating to the Fort Washington negotiations and the plaintiffs in this action.

■ Plaintiffs' motion to compel the defendant to produce Chester A. Aronson, Jr. and David E. Irving for deposition and to require the defendant to compensate plaintiffs for reasonable expenses, including attorneys' fees shall be denied. Aronson and Irving are employees of defendant, Travelers Insurance Co. At this time, there is not a sufficient basis in the record for us to conclude that Aronson and Irving may be regarded as speaking for Travelers. Before Travelers can be required to produce these men for a deposition, the plaintiffs must show authority. Otherwise, their presence must be obtained by subpoena. 8 C. Wright, Federal Practice & Procedure, § 2103 (1970).