**Michael RILEY, Plaintiff,**

v.

**LETTER CARRIERS LOCAL NO. 380 and National Association of Letter Carriers and United States Postal Service, Defendants.**

**Civ. A. No. 78–1414.**

United States District Court,
D. New Jersey.

March 4, 1980.

Richard N. Shaine, Stark & Stark, Trenton, N. J., for plaintiff Riley.

John M. Donnelly, Sterns, Herbert & Weinroth, P. C., Trenton, N. J., for defendants Letter Carriers Local No. 380 and National Association of Letter Carriers.

Mary Catherine Cuff, Asst. U. S. Atty., Trenton, N. J., for defendant United States Postal Service.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, Michael Riley, a former carrier for the defendant United States Postal Service (herein "USPS"), brought an action for breach of the duty of fair representation against the defendants National Association of Letter Carriers (herein "NALC") and Letter Carriers Local No. 380 in the Superior Court of New Jersey. Plaintiff alleged that the defendants had willfully, wantonly and recklessly failed to pursue available remedies to secure plaintiff's reinstatement with USPS (Count I). Plaintiff also alleged that defendants had negligently and carelessly failed to pursue available remedies to secure plaintiff's reinstatement with USPS (Count II). On defendant unions' motion, plaintiff's action was removed to the United States District Court pursuant to 28 U.S.C. § 1441 and 39 U.S.C. § 1208(b).

Plaintiff filed an amended complaint against defendant USPS alleging that defendant USPS had willfully, wantonly and recklessly failed to reinstate plaintiff contrary to the collective bargaining agreement with defendant unions (Count III), and that USPS breached an agreement to hold its determination of plaintiff's grievance in abeyance until the final resolution of criminal charges pending against plaintiff (Count IV). Through this action, plaintiff seeks reinstatement, compensatory and punitive damages, counsel fees and costs.

This matter comes before the Court on defendants' motions for summary judgment.

Plaintiff, Michael Riley, was employed by USPS in Trenton as a letter carrier from August, 1970 and was a member in good standing of Local 380 for the duration of his employment. By letter dated May 11, 1972, USPS formally advised plaintiff that he was discharged, effective May 12, 1972. The stated reason for his removal was the commission of an offense while in uniform for which he was later arrested and indicted and for which a sentence of imprisonment could be imposed. The letter further advised him that he had the right to file a grievance or to proceed before the United States Civil Service Commission pursuant to the Veterans' Preference Act.

After seeing the May 11th letter, the President of Local 380, Bernard Lenihan, advised the plaintiff that he would seek an oral agreement from USPS to hold the grievance procedure in abeyance with respect to Riley's discharge until Riley's criminal case was resolved. Lenihan had repeatedly entered into oral agreements with Postmaster Designee Richard Masterson on behalf of other letter carriers to hold the grievance procedure in abeyance. Riley found this agreement acceptable.

Riley affirms that the Union defendants entered into the agreement to hold the grievance procedure in abeyance. He claims to have been present in Trenton in 1972 when Lenihan and Masterson agreed that the grievance procedure would be held in abeyance.[1]

On May 11, 1972, Lenihan helped Riley compose a letter to USPS as a response to USPS's letter of May 11th. The letter, dated May 16, 1972, was signed only by Riley. It acknowledged that Riley had received the May 11th letter and stated that he chose to seek redress through the grievance procedure under the collective bargaining agreement rather than through the procedures under the Veterans' Preference Act.

Riley then received a letter from USPS Supervisor, Anthony Schiller, dated May 18, 1972, which denied "the grievance appeal dated May 16, 1972, which you submitted to me, indicating that you wished to appeal under Post Office Procedures".

---

1. For purposes of this motion only, USPS and Union defendants accept that there was such an agreement to hold the grievance procedure in abeyance.

Riley then showed the May 18th letter to Lenihan. Lenihan told him it was a formality and would be taken care of by the agreement to hold the grievance procedure in abeyance.[2]

On June 13, 1972, Riley received an additional document from USPS indicating his removal from USPS. Riley spoke to Lenihan about this letter and was told by Lenihan that it was a mistake and that Lenihan would take care of it.

When the criminal charges were dropped against Riley in the summer of 1974, Riley contacted Lenihan. Lenihan reinstituted the grievance procedure on Riley's behalf. USPS, however, did not acknowledge the abeyance agreement into which Masterson and Lenihan had entered in Riley's presence. Consequently, when Lenihan grieved Riley's discharge at Steps 1, 2(a) and 2(b) of the procedure, USPS denied the grievance as untimely.

From the denial at Step 2(b), the NALC approved the case for submission to arbitration. However, the grievant had his case appealed to the Civil Service Commission under the Veterans' Preference Act prior to reaching arbitration. Inasmuch as the one avenue of redress precluded the other, his case was not heard in arbitration and, rather, was processed through the Civil Service procedures. A NALC business agent represented Riley through each of the stages of the procedures. The appeal was denied at every stage, including the final decision of the Appeals Review Board.

Riley also filed unfair labor practice charges with the N.L.R.B. in November of 1974. The N.L.R.B. refused to issue a complaint.

Riley stated in his deposition that the sole reason for his dissatisfaction with the Union defendants was the fact that he did not get his job back with USPS. Riley described his relationship with the Union officials as businesslike and free of hostility. Riley did not file charges against any Union officials for failure to perform their Union duties under procedures provided in the NALC Constitution.

The foregoing facts were derived from the answers to interrogatories, depositions, and affidavits and exhibits submitted in support of this motion. These documents were analyzed in accordance with *Fed.R. Civ.P.* 56,[3] and are not in dispute.

I.

*The Union Defendants*

It is well established that, as the exclusive bargaining representative, a union has a statutory duty to represent all employees fairly, both in its collective bargaining and in its enforcement of the resulting collective bargaining agreement. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, at 190, 87 S.Ct. 903, at 916, 17 L.Ed.2d 842 (1967).

Plaintiff submits that defendant Unions' failure to take action when confronted with the May 18 and June 13, 1972 letters constituted "arbitrary" and "perfunctory" conduct as well as bad faith. Plaintiff contends that these letters put Lenihan on notice that USPS did not acknowledge the abeyance agreement and required him to act to protect plaintiff's grievance rights under the time limitations for grievance steps.

---

2. For purposes of this motion only, the Union defendants adopt Riley's version of these facts.

3. Rule 56(c) states that before summary judgment can be granted, there must be no genuine issue of material fact and the moving party must be entitled to judgment as a matter of law. In determining whether there are issues of material fact, Rule 56(d) is instructive in that a party may not rest upon mere allegations of his complaint. He must respond with specific facts showing that a genuine issue exists for trial. If he fails to so respond, summary judgment can be entered against him.

Viewed in the light most favorable to the plaintiff, the facts do not support a finding of bad faith or arbitrary conduct by the defendant Union. Lenihan's failure to respond to the letters constitutes at most negligence. Since USPS had honored abeyance agreements in the past, it was not unreasonable for Lenihan to believe that this agreement would also be honored. It is also clear that by entering into the abeyance agreement the Union was acting in Riley's best interest. The 1971 Collective Bargaining Agreement provided in Article XVI § 3 that "when there is reasonable cause to believe an employee guilty of a crime for which a sentence of imprisonment can be imposed, the advance notice requirement shall not apply and such an employee may be immediately removed from pay status". Unless the Union entered into the abeyance agreement, it would have been necessary for the Union to begin its grievance before the criminal charges pending against Riley were disposed of. At that time, Riley would have had little chance of succeeding in his grievance claims under Article XVI § 3.

█ Further, Riley's sole dissatisfaction with the Union is the fact that he was not reinstated with USPS. Riley has not complained that the Union's conduct toward him was in bad faith or arbitrary. Since there are no material issues of fact, I find as a matter of law that the defendant Unions did not breach their statutory duty of fair representation in the present action. Accordingly, summary judgment is granted in favor of the defendant Unions.

## II.

*Defendant United States Postal Service*

USPS moves for summary judgment in its favor on the ground that the Court lacks subject matter jurisdiction. In my opinion, summary judgment in favor of USPS should be denied.[4]

For the purposes of this motion it must be accepted as true that notwithstanding the provisions of the collective bargaining agreement, a representative of the Union and a representative of USPS had repeatedly entered into oral agreements that the collective bargaining agreement's grievance procedures would be held in abeyance pending disposition of criminal proceedings against employees. It must also be accepted as true that pursuant to an oral agreement between a representative of the Union and a representative of USPS this practice was adopted when criminal charges were filed against plaintiff, and that thereafter USPS reneged on its oral agreement.

Inasmuch as I have concluded that the Unions did not breach their duty to plaintiff of fair representation, jurisdiction of plaintiff's claim against USPS cannot be based upon 28 U.S.C. § 1337 and the principles set forth in cases such as *Mumford v. Glover*, 503 F.2d 878 (5th Cir. 1974); *Coleman v. Kroger Company*, 399 F.Supp. 724 (W.D.Va.1975).

Jurisdiction of plaintiff's action against USPS, if it exists at all, must be under 39 U.S.C. § 1208(b), which provides:

Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.

Plaintiff contends that the failure of USPS to observe the terms of the oral agreement constitutes a violation of a con-

---

**4.** USPS also moved for summary judgment on the grounds that (i) plaintiff failed to exhaust the grievance procedures available to him under the collective bargaining agreement, and (ii) he is barred by the doctrine of laches. The first of these grounds is not a basis for summary judgment because it might be found that the existence of the oral agreement induced plaintiff to refrain from pursuing the procedures specified in the collective bargaining agreement. The second of these grounds is not a basis for summary judgment because laches has not been established as a matter of law. Plaintiff actively pursued other remedies before instituting suit, of which remedies USPS must have been aware, and there is no showing that USPS has been prejudiced in any way by the failure to institute suit at an earlier date.

tract between USPS and a labor organization representing USPS employees.

USPS, on the other hand, asserts that only the collective bargaining agreement between USPS and the Union is a contract contemplated by § 1208(b) and that the statutory provision is not applicable to the oral agreement and, therefore, does not confer jurisdiction upon the Court in this case. USPS contends, correctly, that § 1208(b) is virtually identical to the language of 29 U.S.C. § 185(a) (§ 301 of the Labor–Management Relations Act) and that cases construing the latter statute are pertinent in construing the comparable provisions of the Postal Reorganization Act, e. g., *National Association of Letter Carriers v. Sombrotto*, 449 F.2d 915 (2d Cir. 1971).[5] USPS cites a number of cases to support its position, e. g., *Adams v. Budd Company*, 349 F.2d 368 (3d Cir. 1965); *Weiss v. Legal Aid Soc.*, 449 F.Supp. 571 (S.D.N.Y.1978); *Pajares v. U. Steelworkers of America, Local 5769*, 432 F.Supp. 418 (E.D.La.1977); *American Postal Wkrs. U. v. United States Postal Service*, 356 F.Supp. 335 (E.D.Texas 1972). As stated in *Adams*, "Section 301(a) only creates federal jurisdiction, in the absence of diversity of citizenship, with respect to '[s]uits for violation of contracts between an employer and a labor organization * * * or between any such labor organizations'". 349 F.2d at 369–370. And as stated in *Weiss*, the "Court is without jurisdiction when the plaintiff is an individual employee suing upon an individual contract with his employer". 449 F.Supp. at 573.

■ It is my opinion, however, that an agreement such as the oral agreement alleged by plaintiff is a contract between the Postal Service and a labor organization representing Postal Service employees within the meaning of § 1208(b), and that plaintiff's claim arises from a collective bargaining contract within the meaning of *Smith v. Evening News Assn.*, 371 U.S. 195, 83 S.Ct.

267, 9 L.Ed.2d 246 (1962). The oral agreement to hold in abeyance grievance proceedings purported to be a modification of the written collective bargaining agreement between the Union and USPS. Without determining at this time the validity or binding effect of such an oral agreement, it was designed to benefit not just plaintiff but also other USPS employees who were similarly situated. It was negotiated and entered into not by plaintiff and USPS but by the Union and the employer. Thus, whether the oral agreement is deemed to have been a modification of the written collective bargaining agreement or an independent agreement, it was (or was designed to be) a contract between USPS and a labor organization representing USPS employees.

The cases which USPS cites in support of its position are distinguishable.

In *Adams* the plaintiff employees did not sue on existing agreements between the union and the employer; they sued to "enforce, under Section 301(a), their 'contract of hire' super-seniority rights, accorded under [the employer's] pre-labor contract policy, even though subsequently negotiated collective bargaining agreements bargained away such rights". 349 F.2d at 369.

In *Weiss*, the plaintiff (an attorney) employee's "claim is based upon an alleged individual contract between the Society and the individual attorneys and not upon any agreement between the Society [the employer] and the Association [the union]". 449 F.Supp. at 574.

In *Pajares*, the plaintiff employee's claim was "based upon an alleged contractual agreement existing between the Local and him, and *not* upon the collective bargaining agreement or supplemental agreement which existed between the Local and the Company". 432 F.Supp. at 422.

---

5. Section 301(a) of the Labor-Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In *American Postal Wkrs.*, the plaintiff employees sought to enforce a coffee break practice which was not established by the collective bargaining agreement but which was claimed to be required by reason of past practices of the Postal Service. Rejecting these allegations as a basis for federal jurisdiction, the court stated that "[c]learly the past practices alleged by plaintiffs in this case are too vague and indefinite to constitute a contract within the contemplation of Section 1208(b)". 356 F.Supp. at 338.

By way of contrast, in the present case plaintiff relies on an alleged agreement, albeit an oral one, which was specific in its terms, which was entered into by the Union and USPS, and which related to provisions of the collective bargaining agreement. Given these facts, § 1208(b) confers jurisdiction.

USPS's motion for summary judgment will be denied. Plaintiff's attorneys will submit an appropriate order, consented to as to form by the attorneys for the other parties.

